UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERICO PAZ,<br><br>             Plaintiff,<br><br>     v.<br><br>STATE OF IDAHO, WARDEN ALBERTO RAMIREZ, PSYCHIATRIST SCOTT ELIASON, MS. L. WATSON, NICOLE MENEAR, and IMSI PSYCHIATRIC SERVICES,<br><br>             Defendants. | Case No. 1:21-cv-00201-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

To assist in the screening of the Second Amended Complaint in this case (Dkt. 16), the Court ordered Defendant Scott Eliason to provide a Martinez report to address Plaintiff's allegations that he is being denied medications for psychiatric and other serious medical conditions. Dkt. 17. Dr. Eliason has filed his report with a declaration and over 900 pages of Plaintiff's medical and mental health records. Dkts. 20 to 20-6. Plaintiff has filed a response. Dkt. 22. After reviewing the entire recording in this matter, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted, that further amendment would be futile, and that the Complaint will be dismissed with prejudice.

1. **Screening Requirement**

The Court must screen complaints filed by prisoners seeking relief against the

government or its representatives to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court ordered (before answer) that prison officials conduct an investigation of the incident which was the subject of a prisoner complaint and file a report with the court to enable it to decide the jurisdictional issues and make a screening determination under § 1915. *Id*. at 319. The Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

The Court construed Plaintiff's Complaint as stating Eighth Amendment deliberate indifference claims for failure to provide adequate medical and mental health treatment. The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, Plaintiff must state facts showing that he is "incarcerated under conditions posing a substantial risk of serious harm" as a result of Defendants' actions—which is analyzed under an objective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Plaintiff must also allege facts showing that Defendants were deliberately indifferent to his needs—analyzed under a subjective standard.

As to the objective standard, the Supreme Court has explained that, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate

indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

As to the subjective factor, to violate the Eighth Amendment, a prison official must act in a manner that amounts to deliberate indifference, which is "more than ordinary lack of due care for the prisoner's interests or safety," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Medical negligence or malpractice alone will not support a claim for relief under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).

2. **Discussion**

Dr. Eliason provides extensive medical records and a detailed declaration. Both of these tools aid in the screening of the pleadings. Dr. Eliason is a board-certified psychiatrist and a "Certified Correctional Healthcare Professional." He is both a medical doctor and a mental health provider. Dr. Eliason has treated many patients diagnosed with paranoid schizophrenia and antisocial personality disorder and knows the standard of care for treating those conditions. He has been Plaintiff's treating psychiatrist since about 2010. Dkt. 20-1, pp. 1-3.

Plaintiff has been diagnosed with "paranoid schizophrenia and antisocial personality disorder, to a severe degree." *Id.*, p. 3. Plaintiff could become violent if not

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 3

treated with appropriate medications. *Id.*, pp. 6-7. The medical records support these medical opinions. *See* Dkts. 20-2 to 20-6.

To treat these mental health conditions, Dr. Eliason prescribed an antipsychotic, haloperidol decanoate ("haloperidol"), for Plaintiff in 2010, and that prescription continues today. Since about May 2019, Plaintiff has received his haloperidol via long-acting injection, administered every four weeks and has been compliant with taking the medication. *Id.*, p. 3.

### A. Failure to Treat Plaintiff's Tremors

Plaintiff alleges that he suffers from tremors when he takes haloperidol—which is a known side effect of that medication. *Id.* Dr. Eliason has prescribed Cogentin and Inderal in the past to help with the side effects. Plaintiff requested that Dr. Eliason discontinue these medications. *Id.* Plaintiff says that these medications did not help the tremors caused by the haloperidol. Dkt. 22.

To help with the tremors, on June 15, 2022, Plaintiff requested and received a prescription of ropinirole, which can treat restless leg syndrome, from a non-psychiatric provider at the prison. However, after Plaintiff began taking ropinirole, Dr. Eliason received reports that Plaintiff had begun exhibiting behavior consistent with possible worsening psychosis. Dkt. 20-1, p. 6. Dr. Eliason was aware that worsening psychosis can be a side effect of ropinirole. Accordingly, Dr. Eliason immediately discontinued Plaintiff's ropinirole medication. Thereafter, Plaintiff's mental health conditions seemed to improve. *Id.*, p. 6.

Plaintiff's disagreement with Dr. Eliason over whether he should be able to continue

taking a medication that helps his tremors and worsens his psychosis does not form the factual basis of an Eighth Amendment claim. Nor has Plaintiff provided sufficient allegations or pointed to evidence in the record showing that he tried the two medications Dr. Eliason prescribed over a sufficient period of time to reject them as nonhelpful for the tremors. In addition, the medical records show consistently that Plaintiff does not complain of any particular problems at his mental health screenings. *See* Dkts. 20-1 to 20-6. He has failed to provide sufficient allegations to show that he has an objectively serious medical need not addressed by Dr. Eliason, or that Dr. Eliason has been deliberately indifferent to his medical and mental health needs.

      B.    *Failure to Prescribe Ingrezza Medication for Side Effects*

While conversing with Dr. Eliason, Plaintiff explained he had recently seen commercials for a medication called Ingrezza and expressed an interest in trying that medication. Dkt. 20-1, pp. 4-5. Ingrezza is a medication specifically prescribed to treat tardive dyskinesia. *Id.*, p. 5. Tardive dyskinesia is a side effect caused by some medications that presents as repetitive, jerking movements that occur in the face, neck, and tongue. Plaintiff did not have tardive dyskinesia per Dr. Eliason's objective assessment. Thus, Dr. Eliason did not prescribe Ingrezza for Plaintiff at that time. *Id.*, p.5.

Plaintiff's disagreement with Dr. Eliason over whether he should be able to take a drug he saw advertised on television to try to address his tremors, even though it is specifically prescribed for jerking movements that Plaintiff does not exhibit, does not form the factual basis of an Eighth Amendment claim. Whether the medication is costly does not factor into the equation, given that Plaintiff does not exhibit the specific symptoms

Ingrezza addresses.

### C. Failure to Prescribe Austeda for Suicidal thoughts, Seriovital for Sleeping Disorder, Prevegen for Mind Improvement, and Nexium for Heartburn

On June 23, 2021, Plaintiff submitted a Health Service Request ("HSR") stating, "I would like to try a new medication that is out for suicidal thoughts." Dkt. 20-1, p. 4. As a result of this HSR, medical staff placed Plaintiff on a four-hour suicide watch. Thereafter, Plaintiff was assessed by a mental health clinician. Although Plaintiff was emotional due to lack of sleep and slightly frustrated with his incarceration, the clinician released Plaintiff from suicide watch because he presented as "low risk." Plaintiff agreed to comply with his medication, to regulate his sleep patterns, and to address any medication concerns with Dr. Eliason. Plaintiff was scheduled for three days of post-watch release follow-up appointments. *Id*.

The next day, Plaintiff had an appointment with Dr. Eliason. Plaintiff denied any suicide ideation or self-injurious behaviors. At that time, Plaintiff was compliant with his haloperidol injections, reported a normal appetite, and explained that things were going well for him. *Id*., pp. 4-5.

Plaintiff had a follow-up appointment with Dr. Eliason on July 15, 2021. *Id*., pp. 5-6. At this follow-up appointment, Plaintiff reported he was doing well. *Id*. Although Plaintiff requested multiple new medications, he denied the necessity for each. Further assessment by Dr. Eliason indicated there was no need for additional medications. *Id*. Dr. Eliason believed Plaintiff was likely shopping for medications out of boredom since he had no symptoms that would warrant any other medications Plaintiff was requesting. *Id*.

Therefore, Dr. Eliason appropriately continued Plaintiff's haloperidol injection prescription and declined Plaintiff's other unsupported requests. *Id*.

From July 15, 2021, through September 12, 2021, Plaintiff's mental health has been assessed as stable. Plaintiff made no additional supportable complaints in more than ten separate appointments. Dkt. 20-1, p. 6. On August 17, 2021, Dr. Eliason assessed Plaintiff after he submitted a HSR stating "I want to change my mental health meds to pills twice daily, please." *Id*. (referencing Corizon_Paz_000686). At that appointment, Plaintiff stated he was doing well and happy, denied suicidal thoughts, and denied any side effects from his haloperidol.

Dr. Eliason's objective assessment of Plaintiff aligned with Plaintiff's subjective assessment, meaning he appeared to be doing well. Because Plaintiff was doing well on the long-acting injection of haloperidol, Dr. Eliason decided that it would not be helpful to change the method of delivery to pills. This decision was made based on the severity of Plaintiff's mental diagnoses (*i.e.*, he has very serious schizophrenia if he is not taking appropriate medications and could be very violent off his medications), the effectiveness of his current haloperidol long-acting injection, and his past noncompliance with oral medications. *Id*., pp. 6-7.

Overall, Dr. Eliason opined that, though Plaintiff has complained of prescribed medications intermittently, Plaintiff has also indicated on multiple occasions that he is satisfied with haloperidol. Plaintiff's paranoid schizophrenia and antisocial personality disorder remain stable on haloperidol.

Although Plaintiff has complained to other providers about wanting antidepressant

medications, Plaintiff has not exhibited symptoms such that Dr. Eliason would be inclined to prescribe them. Nevertheless, Dr. Eliason reported that, should Plaintiff request antidepressants and present to him in a manner consistent with depression, Dr. Eliason would be open to prescribing appropriate antidepressants under the circumstances. To date, however, Plaintiff generally presents to Dr. Eliason as stable, bubbly, and enjoyable to work with, which is not consistent with depression. *Id.*, p.7.

Plaintiff's vague complaints about not receiving various requested medications do not state a plausible claim that he is being denied medical or mental health treatment for serious medical conditions. The record reflects that Dr. Eliason carefully considers Plaintiff's requests, but has determined, in his professional opinion, that the additional medications requested are not warranted or would substantially interfere with Plaintiff's treatment for severe mental health conditions that, if left untreated, may cause Plaintiff to act out in violent ways.

### 3. Conclusion

Plaintiff has not shown by his allegations or with the supplemental medical records provided by Defendant that he can meet the objective or subjective standard for stating an Eighth Amendment claim. As to the objective prong of the Eighth Amendment standard, the medical records present a picture of a man in his early 60s in relatively good health despite his severe mental illness challenges, thanks to the care of Dr. Eliason and the prison medical staff. Plaintiff has not shown that he has objectively serious medical conditions that require the medications he asserts he is not receiving. The 900 pages of medical records show that Plaintiff is receiving better care than many Americans who are not incarcerated

and who are nevertheless footing the bill for Plaintiff's excellent mental health care in prison.

As to the subject prong of the Eighth Amendment standard, Plaintiff has baldly alleged that Dr. Eliason lies and argues with him, but the medical records show that Dr. Eliason is an experienced, contemplative provider who is very knowledgeable about Plaintiff's severe mental illness and makes decisions according to what he deems best for Plaintiff in the context of Plaintiff's severe mental illness. The record reflects that when Plaintiff presents Dr. Eliason with a new request, Dr. Eliason carefully considers it in light of Plaintiff's diagnoses and other medications. No deliberate indifference is evident from the allegations of the pleadings or the medical records.

4. **Opportunity to Amend**

The Court now considers whether to allow Plaintiff a third opportunity to amend the complaint. Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. That rule states that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained the reasoning behind allowing the opportunity to amend:

In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. Courts must liberally construe civil rights actions filed by pro se litigants so as not to close the courthouse doors to those truly in need of relief. *Eldridge v. Block*, 832 F.2d 1132, 1135-37 (9th Cir. 1987) A pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome

deficiencies unless it is clear that those deficiencies cannot be overcome by amendment. *Id*. at 1135-36. Although several factors contribute to the analysis of whether a plaintiff should be allowed an opportunity to amend, futility alone can justify denying such an opportunity. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

The Court concludes that amendment in this case would be futile. Plaintiff's extensive medical records would not help him state a claim on the factual bases alleged in the second amended complaint. In fact, the opposite is true. Plaintiff's care does not reflect any facts that could form the basis of an Eighth Amendment claim. Therefore, the Court will dismiss the second amended complaint without leave to amend.

## ORDER

**IT IS ORDERED** that Plaintiff's case is DISMISSED with prejudice.

DATED: August 1, 2022

_____
David C. Nye
Chief U.S. District Court Judge